and United States v. Ryan Morris Mr. Siegel. Good morning, Chief Judge Lynch. And may it please the Court, I'd like to reserve one minute for rebuttal. The District Court imposed a 10-year mandatory minimum sentence for 280-gram crack cocaine offenses, even though Mr. Morris did not plead guilty to, and thus was not convicted of, a 280-gram offense. That error, which the government's brief correctly describes as sentencing error, warrants remand for two reasons. First, for sentencing errors, this Court's plain error case law requires remand whenever there is a reasonable probability that the sentencing court would have imposed a lower sentence if had correctly applied the law at sentencing. Those cases control this case because it is undisputed that Judge Woodlock would have imposed a significantly lower sentence if, at sentencing, he had had the benefit of the Supreme Court's decision. It's not that simple, is it? I mean, it may be that simple. Your argument may prevail. But just because a judge says, gee, if I could, I'd give you a lower sentence, regardless of the evidence, would that statement be enough to get us to remand? Doesn't it depend in part on the quality of the underlying evidence? Not normally, Your Honor. Not if the Court looks at the strand of cases applying, say, the Booker error, going back to Your Honor's decision in Antonacopulos. Now, if the Court – now, our submission, of course, is that those cases up to Vazquez-Rivera and Diaz-Diaz control. And the reason why those cases say that the quantum of evidence doesn't matter is that they're looking at what the district court would have done if it had applied the law correctly. Now, if Judge Whitlock had had the benefit of a lien, he may have been – although he didn't say this – he may well have been convinced beyond a reasonable doubt about the 280-gram element. But even so, if he was not constrained by the 10-year mandatory minimum, he would have been free to impose a sentence below it. And, in fact, whatever his views are of the evidence, we know that he would have imposed a sentence below it. Now, I think in saying, Your Honor, that it's not that simple, there is, of course, this other strand of case law, which applies a overwhelming evidence test. Now – Yes, but we have the author of that case. I took the liberty of coming in rather early this morning to read it again, and it seems to me that it stands pretty much in the way of the argument you're making. Because that was the case where the error was actually preserved. It will shock you to hear that I don't quite agree with that. The reason why I don't quite agree with that is one has to do with the law and one has to do with the facts of this particular case, or the record, rather, in this particular case. Can we talk about the facts? Certainly. I think it might be helpful. So we have a guilty plea here and not a failure to instruct a jury. As a result of the guilty plea, the judge held a sentencing hearing as to the amount of drugs. The government asked the defendant about the amount of drugs, and the defendant says, gee, I don't really remember. And the government says, all right, give us your best estimate. He said, well, gee, my best estimate is X, Y, and Z, the different transactions. And the judge says, okay, based on those estimates, I am going to find only by a preponderance of the evidence. I want to be quite clear. I'm not concluding this by beyond a reasonable doubt. And then he says, you know, it's at least 280 grams. That's why the 10-year mandatory minimum applies. But if I could do otherwise, I would give you a lower sentence. The situation of a guilty plea where the defendant is testifying strikes me as being a bit different than a guilty, a jury trial where the defendant is never going to take the stand and assist the government, if you will, in determining drug quantity. And there was no stipulation here. That's right. And that goes back to the question about how this case, of course, relates to Heracli. In Heracli, there was not only this stipulation, but it came, as the government argued, before the plea. There was a stipulation to amounts that overwhelmingly established drug quantity. Here we have testimony that, in the district court's view, supplied a basis by a preponderance standard to support the 280-gram threshold. But that's it. And as Chief Judge Linsch, you just said. Well, you started out with the seizure at his house, which was significant, the amount. So you begin with that base, which there's no argument about. They seized that amount. He doesn't dispute that. And even though his testimony, one might say, was not entirely clear, it was pretty clear how much he was doing, which put him well over. Did it not put him well over the threshold? Even on a preponderance, it's pretty clear that it appears that he was very much over, taking his testimony at face value. Well, it depends which part we take at face value. It's true that after being required to guess, he gave testimony, which, as Judge Whitlock said, could establish the evidence by a preponderance. But there are many constituent parts of that guess. There was a number of transactions. Whether they were for cocaine or for something else, he testified that at least one was for marijuana, maybe more had been. And then there was the question of how many of those cocaine transactions were sort of earmarked for cooking into crack cocaine. At every step of the way, there requires some degree of inference. Now, the government would certainly be entitled, if there had been a hypothetical trial in front of a hypothetical jury, and if we further hypothesize that Mr. Morris had testified, which is sort of impossible to think about, really. But if that had happened, the government would be entitled to make an argument to the jury that that evidence supplied evidence beyond a reasonable doubt of drug quantity. But that would merely be a jury argument. The jury wouldn't be compelled to find this. And certainly, in the context of Aileen, for an appellate court to go beyond what the district court said, the district court says at page 335 of the appendix, I'm dealing here with proof by a preponderance. For an appellate court to say, actually, we think there was proof beyond a reasonable doubt, would kind of turn the Sixth Amendment jurisprudence of Aileen upside down, because you'd have appellate courts really finding these facts. So the submission here is that. Yes, but that leads to an argument. We could remand for resentencing, tell the district judge to use beyond a reasonable doubt as the standard. Well. But then. That's not quite. I don't think that's quite right. Right. Because that would be a remand to tell the judge to do something that's unlawful. The question is. No, hold an entirely new hearing. But whether your client could be compelled to testify at that point at the new hearing. And that gets, Your Honor, a little bit into the kinds of arguments that were issued in the Pena case, where that's precisely what the government. Which I wrote. That had occurred to me. And in that case, Your Honor, not only did the court reject the argument that you just mentioned, but. There were some double jeopardy concerns. Right. And so here we have, again, maybe the government will stand up and say that it no longer believes this is a sentencing error. But here we have the sentencing error. And at the moment that Mr. Morris pleads guilty to the base level issue in count one, it's impossible to go back, certainly impossible to rewind his testimony now, and pretend that the district court was not, in fact, free to impose a lower sentence. All right. We will see at this point whether Justice Souter has some questions for you. I do have one question here. And it's a question whether this is not really a plenary case, but, in fact, a case of waiver. Because the, and I'm quoting from the bottom of page eight of the blue brief here, the judge told Morris at the time he stood up and began the plea proceedings, he told him, and the quotation is, that by pleading guilty, you are leaving it up to me to decide the quantity. And there was apparent agreement that that's what would happen. So my question is, why do we have any issue here about the judge's finding, as opposed to his admission or the government's proof that it's gone to trial? Why isn't there a waiver of the issue? Well, for a couple of reasons, Justice Souter. The first is that if I'm calling that part of the colloquy correctly, that came at a time when the judge was referring to the guidelines. And this is generally at, I think, pages 163 to 167 of the joint appendix. And it was in that context that the district court was saying, you are leaving it up to me to determine the weights. And that was, of course, highly important in this case, because the government's argument was going to be that Mr. Morris was responsible not just for the threshold quantities, but for many kilograms over them. And thus, Mr. Morris was conceivably at risk for a sentence above the mandatory minimum. The second issue, the reason why I would say there has been no waiver, Justice Souter, goes to what happened just before the colloquy you mentioned, which was at pages 163 and 164 of the appendix. And there, the judge turned to the AUSA and says, what are the mandatory minimums? And the AUSA lists for count one both the 10-year mandatory for 280-gram offenses and the five-year, which left it entirely ambiguous whether Mr. Morris was understood that he would necessarily get 10 years if he pled guilty. And, in fact, on page 164, the district court summarized the AUSA's statement by saying, those are what the sentences could be instead of will be. So going into the plea, Justice Souter, Mr. Morris really was not made to understand that by virtue of pleading guilty, he would be sentenced to a 10-year mandatory minimum or that he would necessarily have to have one simply based on findings by a preponderance. So you're saying the real problem here is that he did not understand the consequence of what the judge might find with respect to quantity rather than the fact that the judge would make a finding of quantity that would control. Certainly. I don't want to overstate the point, Your Honor. I mean, we are here and my brief does concede that there was a forfeiture in that no one on behalf of Mr. Morris argued that there was a Sixth Amendment problem with this sentence. But that's every plain error forfeiture case. We don't think that it rose to the level of a waiver because, frankly, there's really no evidence in the record that Mr. Morris' counsel was even aware of a Sixth Amendment issue to waive. Well, Mr. Morris knew once he was sentenced that he had a 10-year minimum, mandatory minimum. So he didn't move to set aside his plea on the grounds of not understanding that that was true? That is true, but it's also true in every plain error case. I mean, I'm thinking in particular to Justice Souter's opinion in Requenco where there was an understanding that the firearm element would have been found by a district court judge at sentencing. And, of course, it's true that in that case there was an objection. The point is everybody knows until Harris is overruled the way things are going to work. And the way things are going to work here is judges were consistently making findings consistent with the Harris opinion until it was overruled and people understood that. Any further questions? Thank you. No, nothing further. Thank you. Thank you. Jennifer Sachs. Good morning. Good morning. May it please the Court. Jennifer Sachs of the United States. In this case, the defendant took the stand and confessed, at least put a floor under, the responsibility for an amount of crack cocaine that far exceeded the statutory mandatory minimum. Since he confessed to that triggering quantity, he can't demonstrate that the Allain error in this case affected his substantial rights or caused a miscarriage of justice, seriously undermined the integrity or public reputation of the proceedings. And those are the key things to focus on, the standard, the plain error standard. Put another way, because the mandatory minimum was based on the defendant's own sworn statements, that evidence was overwhelming. Dr. Tethered. Yes, but I would have thought he would have had a choice in pleading guilty whether to do as he did, knowing the government's burden of proof at the time was merely preponderance of the evidence as to drug quantity and that it was a determination that would be made by the judge and not the jury. If we weren't in a guilty plea, and you weren't relying on the defendant's own statements, and if he had not testified at trial, what was the government's evidence to meet the standard of proof beyond a reasonable doubt? Isn't that pertinent to our consideration? Well, frankly, Your Honor, I think no, because we have to look at the evidence in the case as it came out. Yes, we're always sort of dealing with hypotheticals in these cases where we have a guilty plea. No trial ever occurred. But we have to look at the spectrum of evidence as it came out, and the evidence as it came out was primarily the evidence that the defendant testified to. Yes, there was drug quantity. Yes, but I've just asked you, what evidence is there that is not dependent on his testimony? The evidence not dependent on his testimony. And would it have met proof beyond a reasonable doubt? Well, there's evidence certainly that was not dependent on his testimony. There's a seizure of 123.5 grams of crack cocaine. Yes, that was what was at his house, right? At his house. There were the numerous phone calls in which he's making deals for drugs. There was the finding at his house, along with the crack cocaine, of the materials used to process powder cocaine into crack cocaine, showing that that's, in fact, what he was doing, the taped phone calls. But that's not the only evidence that we look at in determining whether there was plain error and whether the evidence was overwhelming. We can't exclude the evidence that he testified to. It's the same as in the Heracli case, where the whole panoply of evidence was looked at in determining whether there was a reversible lane error, of course, under a different standard in that case. But in this standard, the plain error standard is even harder for the defendant to meet, and the evidence here is stronger because it's based on the defendant's own statements. In fact, this Court has said in a number of cases that there's not an error at all where the finding is premised on the defendant's own statements, that fact-finding based on admissions by the defendant is not. Yes, but in a way, I agree. Had there been clear admissions, had there been a stipulation, this would be a somewhat different case. What we have is testimony. I don't really remember the government saying, okay, give us your best estimate. He then gives the estimates, the district judge drawing a clear line saying, I'm not going to reach the issue of proof beyond a reasonable doubt. I'm only going to reach the issue of preponderance. Does that make this case different? I don't think it does, Your Honor, because in this case, I think you can view the defendant's testimony. Yes, was it exact? No. Did it represent an estimation on his part? Yes. But I think it establishes a floor. I mean, common sense suggests, and the district court in this case found, the defendant, when testifying, is going to understate rather than overstate his involvement, as well as the drug quantities and number of deals involved. In fact, the district court had a chance to view this particular defendant, said that he did not credit his inability, claimed inability, to not remember these transactions. So I think that what the defendant testified to establishes a floor. But even if you discount it further, if you take just the minimal transactions that he admitted to, he said, you know, look at the testimony, 12 transactions, 9 of 62 grams, that makes 558 grams. That's almost double the 280-gram mandatory minimum. Then an additional 3 of 28 grams, that's another 84. Then you have the 123.5 grams seized at his apartment. Now, I suppose there could be an argument made that, you know, that might be double counting, that maybe the 123 grams represented, which found in December, represented something left over from the deals back in early, mid-May, June. It's possible. It seems very unlikely, and the district court found that was not the case. But even if you sort of put them all together, he's still over double the quantity required. So I think you don't have to suggest that the defendant was making a perfect recounting, but even looking at it as a floor, even discounting further, he's still, his own admission suggests that he's way over the standard. And that's the kind of evidence that is overwhelming. It's clearly uncontested. I mean, his testimony under oath is sort of the opposite of contesting the quantities. And I think that the plain error review standard is sort of the key filter to look at this case through. That's the kind of, the standard is only going to afford reversal, where you really have what this court has called a blockbuster error, something extreme. And that just isn't the case. When the defendant fully voluntarily admits to something way above the triggering quantity, that's not the kind of extreme error that justifies reversal. If the defendant had put in an affidavit, which I understand this case does not involve, saying I would not have pled guilty had I understood the consequences of the Elaine case, would this be a different case? I don't think so, Your Honor, because I'm sure in the context of Elaine where the law has changed, you look sort of at the law as it was at the time. And you have defendants who, like Heracli in that case, although Elaine was not yet the law, nonetheless, in anticipation, raised those kinds of objections. The burden is put on the defendants to raise the objections, to preserve the arguments. And I think in this argument, Justice Souter, it's not, as suggested by his questioning, it's not an argument the government has made. But at the time of the guilty plea, the defendant was specifically told, yes, there is a mandatory minimum of 10 years' imprisonment. Just to correct something my brother counsel said, that when they said there's a mandatory minimum of five years, what that was referring to was the mandatory minimum of five years of the term of supervised release, not of imprisonment. There is an argument that here the defendant actually pled to that, in knowledge that that was going to be applied. There was really not a discussion of drug quantities at that point. So that's not an argument that the government is making. But it's a possible argument. And for that reason, I think it would make no difference if there were such an argument. So from your point of view, it doesn't really matter what the district court said in terms of, I'd really rather give a lower sentence here. Congress has mandated it on a certain quantity. And that's the end of it. Well, it's not so much that it doesn't matter, but it's not determinative. It's not determinative for two reasons. The first is, looking at the plain errors, it's got to affect the defendant's substantial rights. The court's view that this was not a sentence it would have imposed goes to sort of its discretion. But the court doesn't have discretion where the evidence is overwhelming that it's above the triggering quantity. That's a decision, as the district court recognized, for Congress to make. And it's one Congress has made. And second, it goes to the second problem of miscarriage of justice. I mean, where it's statutorily mandated, that's sort of the opposite of a miscarriage of justice. And the district court in this case recognized that, saying, I find this sentence is not unreasonable. A not unreasonable sentence is the opposite of one that's a miscarriage of justice. We'll see if Justice Souter has some questions. Thank you. No, I have nothing further. Thank you. I'd just like to make one minor concession and two quick points. I think it may be right that on page 163 there's a reference to supervised release. I read that when I first read it as saying mandatory minimum of five years on the sentence and then a lifetime of supervised release. If I read it wrong, I think it's possible that Mr. Morris did as well. The two points are this. I want to highlight the broad daylight between the origins of the overwhelming evidence test and what the government has just asked the court to do in this case. So starting from cases like Perez-Ruiz and Supreme Court cases like Nader and Roquenco, we were always talking about overwhelming evidence that had been introduced at trial, presented to a jury. In Heracli, there was overwhelming evidence that was admitted before the conviction. So it was a functional equivalent of trial evidence. And here what the government is saying is this manifest error can be affirmed on the basis of estimates at sentencing. If I could just add one more point. Chief Judge Lynch, you asked whether the case would be different if Mr. Morris had submitted an affidavit saying that he would not have pled guilty. Well, he all but did that. He had the safety valve available to him. He chose to plead guilty. There was no reference to the drug quantity on count one. He chose to contest it all the way through, unlike in Heracli, where the defendant did pursue the safety valve. And at every step of the way, his counsel argued this doesn't add up to 280 grams. We both know that that's not good enough. If he wanted to make that argument, he could have put in an affidavit. You're asking us to view other actions as the equivalent of that affidavit, and there isn't any such thing. If I could just respond briefly to that. Of course, it's not my contention that such an affidavit is required. What I'm merely saying is that if you look, Your Honors, at the overwhelming evidence test that's been applied recently in Pizarro, the questions are was the evidence overwhelming? Usually we're talking about trial evidence. And was there a lack of contest? Now, here, all I'm saying is there was quite the opposite of the lack of contest. There was contest at every step. Thank you. Justice Souter, do you have any further questions? Oh, thank you, Pat. Thank you.